UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOANN PALAZZO, Individually and as Trustee of the JOANN PALAZZO TRUST, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 3:18-cv-00709<br>) |
| JAMES STAN HARVEY and DAFFEY HARVEY d/b/a SUN COMPANY BUILDERS and CMW, INC., | )<br>)<br>)<br>) |
| Defendants. | ) |

# MEMORANDUM OPINION

What a difference a day makes. At least it would if James Stan Harvey and Daffey Harvey d/b/a/ Sun Company Builders (collectively "Sun Company") are correct in their Motion for Summary Judgment (Doc. No. 21) that (1) the horse arena and horse barn/stable commissioned by JoAnn Palazzo "were completed no later than July 31, 2014"; (2) any "suit for property damages relating to the alleged deficient construction had to have been filed by July 31, 2018"; and (3) "[t]his simply did not occur" because "the Complaint was not filed until August 1, 2018." (Doc. No. 18 at 1, 5). But Sun Company is indisputably wrong on the last point – the Complaint was filed on July 31, 2018. (Doc. No. 1). Palazzo deems this to be a "fatal flaw" because Sun Company "can *never* unring that bell." (Doc. No. 26 at 1, 8) (emphasis in original). Her better argument, and the one with which this Court agrees, however, is there are genuine issues of material fact as to when the construction project was completed thus rendering summary judgment inappropriate. This is particularly so because Sun Builders also asserts the arena and stable were completed long before the July 31, 2018, and CMW, Inc. has also filed a Motion for Summary Judgment (Doc. No. 18)

raising many of the same arguments advanced by Sun Company, but acknowledging the correct date for the filing of the Complaint.

**I.**

The facts along with the permissible inferences drawn in Palazzo's favor, Stratienko v. Cordis Corp., 429 F.3d 592, 597 (6th Cir. 2005), are these:

Palazzo lives in Fairfield, Connecticut and is the trustee of the JoAnn Palazzo Trust, which owns Meadowood Farm[1] in Murfreesboro, Tennessee. She engaged CMW to design and oversee the construction of an indoor horse riding arena and barn/stable[2] that were to be built by Sun Company. The agreement with CMW was pursuant to a Design Contract, and a Construction Contract governed the agreement between Palazzo and Sun Company. Both were standard form contracts developed and published by the American Institute of Architects ("AIA").

The horse would start with the erection of a pre-engineered metal building ("PEMB") with a skeleton that contained red, shop-primed structural steel components. That primer was intended as a short-term fix, and not as protection from continued exposure to the elements. Instead, Sun Company was required under the contract to prime and paint the metal.

The PEMB arrived at Meadowood Farm on or about September 19, 2012, and was stored outside and uncovered until the exterior of the horse arena was erected between January and March of 2013. Even then, according to Palazzo, the metal remained exposed until it was site-primed and painted. This priming and painting started in May 2013, and continuing until the roof was installed sometime in August 2013.

---

[1] The property was initially named the Palazzo Farm.

[2] The stable was to contain 32 stalls, along with living quarters.

CMW approved the Sherwin-Williams primer and paint applied by Sun Company to the steel components of the stable. Palazzo claims, however, that the substrate was not prepared in accordance with the manufacturer's instructions, and that the primer and the enamel topcoat made the steel susceptible to mold and mildew. Indeed, Palazzo claims to have discovered discoloration of the structural members of the arena in June 2015, and informed both CMW and Sun Company of her concerns. She also made arrangements for portions of the PEMB to be bleached in 2016 and again in 2017. However, after each bleaching, the discoloration returned within 6 months. To make matters worse, the coating covering the steel began to delaminate, and rust started appearing in November 2017.

Palazzo told both CMW and Sun Builders about the problems she encountered, but was dissatisfied with their responses. Accordingly, she filed suit in this Court on July 31, 2018, alleging breach of contract and negligence against both Defendants.

**II.**

Because Palazzo seeks to recover damages arising out of improvements to real property, the parties agree[3] that the following statute of repose applies:

> **Limitation of actions.**—All actions to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property, for injury to property, real or personal, arising out of any such deficiency, or for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying in connection with, such an improvement within four (4) years after substantial completion of such an improvement.

---

[3] At least they did so until Defendants raised the three year statute of limitations found in Tenn. Code Ann. § 28-3-105(1) in their reply briefs. That argument will be addressed in the next section.

Tenn. Code Ann. § 28–3–202 (2000). "The legislative purpose behind the statute is to 'insulate contractors, architects, engineers and the like from liability for their defective construction or design of improvements to realty where either the occurrence giving rise to the cause of action or the injury happens more than four years after the substantial completion of the improvement.'" Cartwright v. Presley, No. E2005-02418-COA-R3CV, 2007 WL 161042, at *3 (Tenn. Ct. App. Jan. 23, 2007) (quoting Argus v. Future Chattanooga Dev. Corp., 358 F. Supp. 246, 251 (E.D. Tenn. 1973).

By statute, "'substantial completion' means that degree of completion of a project, improvement, or a specified area or portion thereof (in accordance with the contract documents, as modified by any change orders agreed to by the parties) upon attainment of which the owner can use the same for the purpose for which it was intended; the date of substantial completion may be established by written agreement between the contractor and the owner." Tenn. Code Ann. § 28-3-201; see also Jenkins v. Southland Capital Corp., 301 S.W.3d 268, 275 (Tenn. Ct. App. 2008) (observing in the context of a residence that "'substantial completion' occurs when the owner can use the building for its intended use, that of a home, even if some defects remain"). As a consequence, "the dates of injury and discovery do not matter to this statute of repose which establishes a ceiling beyond which the cause of action cannot exist from the date of substantial completion." Caldwell v. PBM Prop., 310 S.W.3d 818, 823 (Tenn. Ct. App. 2010).

### A.

Both Defendants argue that the horse arena was substantially completed before July 31, 2014 making the filing of the complaint four years later untimely. This presents the first of many genuine issues of material fact, and that has to do with whether the horse arena and stable should be considered different projects.

4

In support of their respective positions, the parties have submitted affidavits. For example, James Harvey of Sun Company declares in his affidavit that "[d]uring the negotiations, prior to then execution of the contract, I specifically demanded, and Palazzo agreed, that the horse arena and horse barn would be deemed separate projects even though they were both incorporated into a single contract." (Doc. No. 16-1, Harvey Aff. ¶ 3). Palazzo asserts the exact opposite in her affidavit, claiming that she "always understood and intended for the Construction Project to be one project with a number of physical phases or components," and that she "never agreed that the horse barn (stable) and arena would be separate projects," (Doc. No. 31, Palazzo Aff. ¶30). Clearly, whether there was one consolidated project or two separate projects cannot be decided based solely on the affidavits that have been submitted. See Selby v. Caruso, 734 F.3d 554, 560 (6th Cir. 2013)(finding summary judgment to be inappropriate where "[b]oth sides submitted conflicting affidavits about what was said and done"); Dawson v. Dorman, 528 F. App'x 450, 452 (6th Cir. 2013) ("Courts may not resolve credibility disputes on summary judgment.").

Nor can it be resolved by looking to the design or construction contracts. On the one hand, Defendants quote language in the construction contract that states: "SUBSTANTIAL COMPLETION DATE WILL BE DETERMINED UPON ISSUE OF NOTICE TO PROCEED FOR EACH SEPARATE PROJECT." (Doc. No. 1-2 Construction Contract § 4.3). They also note, among other things, that the completion of the stable and the arena called for separate payments. These things suggest separate projects.

On the other hand, and as Palazzo points out, only one single design contract and one single construction contract governed both the building of the horse arena and the stable, and there was only one project manual for the entire endeavor. Further, the design contract's "name, location and

5

detailed description" of the "Project" states: "Design and Engineering for a new 32 stall stable with indoor riding arena located on Veterans Parkway in Murfreesboro, Tennessee." (Doc. No. 1-1 at 1), while the construction contract similarly describes the "Project" as the "Palazzo Farm" at 4841 Veteran's Parkway, including an "ARENA AND STABLE." (Doc. No. 1-2 at 1). These things suggest a combined project.

To further cloud matters, language was added to the standard AIA form construction contract that states: "A SEPARATE CONTROL ESTIMATE WILL BE ISSUED BY CONTRACTOR FOR EACH PHASE OR PORTION OF THE PROJECT (1) ARENA (2) STABLE (3) ANY ADDITIONAL PHASES. . .," (id. 1-2 § 5.1)., and this suggests the parties may have viewed the undertaking to be one project with multiple phases or portions. That very same sentence, however, continues with a statement about the "ESTIMATED COST FOR EACH SEPARATE PROJECT," (id.), but then references "RELATED CONTRACTORS FEES," that are defined elsewhere in the contract as being based on the aggregate cost of the entire project. As with the affidavits, resort to the governing contract language does not resolve the parties' initial dispute about whether there was one project or two.

**B.**

Regardless of whether the horse arena and stable were to be separate projects, Defendant insists that they are entitled to judgment as a matter of law because the statute only requires substantial completion of a "specified area or portion" of the project (which they claim the arena alone would be), and the evidence conclusively shows that the arena was completed by no later than July 31, 2014, if not by February of that year. This, however, is an incomplete reading of the statute and does not construe the facts in Palazzo's favor, which the Court is required to do.

The statute defines "substantial completion" in terms of "a project, improvement, or a specified area or portion thereof," but it does so in the context of being "in accordance with the contract documents," that in this case are unclear. Furthermore, the statute provides that the date of substantial completion "may be established by written agreement between the contractor and the owner." Tenn. Code Ann. § 28-3-201.

The construction contract explicitly incorporated AIA Document A201™-2007 by reference, which defines "substantial completion" as "the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use." (Doc. No. 27-2 at 2). According to Palazzo, the project was to be used to stable, train, and ride horses, and this required that there be moisture-rich sand footing on the arena floor. However, the footing could not be spread until August 3, 2014 at the earliest because equipment had been stored in the arena, and Sun Company was utilizing the floor as a "lay-down area" up until that date.[4]

The issue of the flooring aside, Defendants insist that the horse arena with the allegedly rusting metal and delaminated paint was, by Palazzo's own admission, completed at least by February 19, 2014 when she sent an email to Joe Martinolich of CMW. However that supposed admission – to wit, "[m]y understanding with Stan [Harvey] is the Arena is completed" (Doc. No. 21-1 at 1) – is hardly definitive because it is merely a representation of what she was told by one of the owners of Sun Builders. Indeed, Palazzo undisputedly was not at the project on a daily basis,

---

[4] Palazzo claims that both Defendants were well aware of the need for the sand footing to be spread to make the arena useable. Defendants hotly dispute this and note that the final installation of the floor was to be by another contractor of Palazzo's choosing, but all this does is raise yet another issue of material fact.

and she claims that she was relying on statements made by Harvey, with her understanding being that that CMW's design phase portion was completed at that point, not that CMW had completed its construction management services, or that Sun Company had finished building the arena. While CMW labels these assertions "nonsensical and totally inconsistent with the language of her email," (Doc. No. 36 at 3), CMW does not address the letter dated June 28, 2014 from Bill Pickering (one of its principals) to Palazzo in which he references her February 19, 2014 email, states that the Contractor is "now indicat[ing that] "the Project will not be completed until at least well into July," and requests that CMW be given permission to conduct a site visit at that time. (Doc. No. 21-2 at 5). Nor is CMW able to definitively explain-away its Field Observation Reports of April, May and June of 2014 on the grounds that those Field Reports mention and show the arena building only because it was adjacent to the stable. Not only do Pickering's letter and the Field Reports themselves present questions of fact, they ultimately circle back to the genuine issue of material fact as to whether there was one project or two.

Nor can it be concluded, as Sun Company claims, that Palazzo's own "Facebook pages confirm that both the horse arena and horse barn were fit for their intended use no later than July 31, 2014." ((Doc. No. 18 at 2). This assertion is based upon James Harvey's statements in his affidavit and is supposedly evidenced by the alleged Facebook posts attached thereto. Those posts show (1) a picture dated July 18 proclaiming the "outdoor ring fooling [sic] has arrived"; (2) a picture dated July 17 showing the inside of the barn with the caption, "we will be moving our horses to their new home in 2 weeks," (3) a picture dated July 21 showing the inside of the arena with machinery working the ground and the caption, "getting the arena prepped for footing this week," and (4) a picture from the next day showing a large dump truck dropping a load in the arena with the caption,

8

"our custom horse footing being delivered – day and night." (Doc. No. 16-1 at 21-23). Such pictures and statements simply do not establish that both the arena and barn were "fit for their intended use no later than July 31, 2014." Instead, they establish only that work was progressing full speed ahead as of July 21, 2014.

## C.

If all of the foregoing were not enough, Palazzo claims she brought the "discoloration" issue to the attention of both Defendants, but was assured that this was related to maintenance and ventilation issues. This is seemingly supported by an email exchange between Palazzo and Martinolich in mid-November 2015, and between Palazzo and Stan Harvey in early March 2018. To counter this assertion, Pickering, in a supplemental affidavit filed on behalf of CMW, states that Martinolich was not employed by it in November 2015 and that "no representative of CMW received the notice alleged by Ms. Palazzo." (Doc. No. 38, Pickering Aff. ¶¶ 13, 14). Maybe so, but the email from Palazzo to Stan Harvey on March 6, 2018 states that she spoke with Brian Hill, the President of CMW, and sent him a recent photo that showed the discoloration. (Doc. No. 31-9 at 2). In short, exactly which of the Defendants knew what and when (if anything), and whether either was trying to deceive Palazzo cannot be resolved on the record before the Court. This alone is enough to deny summary judgment because the statute of repose on which Defendants rely "shall not be available as a defense to any person . . . who shall wrongfully conceal any such cause of action." Tenn. Code Ann. § 28-3-205(b); see Henry v. Cherokee Const. & Supply Co., 301 S.W.3d 263, 267 (Tenn. Ct. App. 2009) ("The concealment referred to in the statute is not concealment in the original construction, but rather a concealment by defendant of plaintiff's cause of action once it arises.").

## III.

Defendants argue in their reply briefs that the three year statue of limitations found in 28-3-105(1)[5] bars Palazzo's claim because she stated in her affidavit that she "initially discovered the existence of discoloration of the structural members of the arena on the Construction Project on or around June 2015[.]" (Doc. No. 31, Palazzo Aff. ¶ 24). Because that argument was not raised until the reply briefs, Palazzo asks the Court to either ignore it, or allow her to file a sur-reply brief. The Court finds neither proposal necessary.

Generally speaking, arguments raised for the first time in reply briefs are waived, and this applies both on appeal, American Family Prepaid Legal Corp. v. Columbus Bar Assoc., 498 F.3d 328, 335 (6th Cir.2007), and to summary judgment motions filed in the trial court, Ryan v. Hazel Park, 279 F. App'x 335, 339 (6th Cir. 2008). The rationale underlying the rule has been cogently explained:

> Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration. Further the non-moving party ordinarily has no right to respond to the reply brief, at least not until oral argument. As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived.

Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008).

Here, application of the general rule is inappropriate because Palazzo's contention that she noticed discoloration "on or around June 2015" first appeared when she filed her affidavit in conjunction with her opposition response brief. See, Matthews v. Wells Fargo Bank, 536 F. App'x

---

[5] The statute provides that "[a]ctions for injuries to personal or real property . . . shall be commenced within three (3) years from the accruing of the cause of action."

577, 579 (6th Cir. 2013) (stating that a defendant is entitled "to address new arguments presented in a plaintiff's response"); Asbury v. Teodosio, 412 F. App'x 786, 792 (6th Cir. 2011) (observing that "reply briefs reply to arguments made in the response brief"). Nevertheless, and leaving aside that claiming to discover something "on or around June 2015" leaves a lot of wiggle or wriggle room as to the precise date, the Court cannot say, as a matter of law, that Palazzo had three years from whenever she actually noticed the "discoloration" to file suit. As with the statute of repose, "[t]he running of a statute of limitations may . . . be tolled when a defendant engages in conduct intended to conceal an injury from the plaintiff." Fahrner v. SW Mfg., Inc., 48 S.W.3d 141, 146 (Tenn.2001). Further, "discoloration" itself may suggest a cosmetic, as opposed to structural or integrity problem.

"Ordinarily, the question of whether a plaintiff knew or should have known that a cause of action existed is a question of fact, inappropriate for summary judgment." City State Bank v. Dean Witter Reynolds, Inc., 948 S.W.2d 729, 735 (Tenn. Ct. App. 1996); accord, House v. Edmondson, No. W200500092COAR3CV, 2006 WL 1328810, at *17 (Tenn. Ct. App. May 16, 2006). It is only when the facts "are not in dispute and clearly show that a cause of action has accrued and that the statute of limitations has run [can] summary judgment . . . be entered." Coffey v. Coffey, No. E201700988COAR3CV, 2018 WL 4519988, at *7 (Tenn. Ct. App. Sept. 20, 2018). That is certainly not the case here.

**IV.**

On the basis of the foregoing, the Motions for Summary Judgment filed by CMW (Doc. No. 21) and Sun Company (Doc. No. 16) will be denied. Palazzo's Motion for Leave to File a Sur-Reply (Doc. No. 39) will be denied as moot.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE